NORFOLK & WESTERN RY CO v

HARTFORD FIRE . INSURANCE CO

Ohio Appeals, 4th Dist, Adams · Co

Decided May 14, 1929

Henry Bannon, Portsmouth, for Ry Co.
Bagby & Bagby, Georgetown, and Myers & Snerly for Ins Co.

Before Judges HOUCK & LEMERT (5th Dist) and MAUCK (4th Dist)

LEMERT, J.

The evidence shows that the insured was shipping a car load of stock; that he loaded the car himself, placing therein forty hogs, fifty calves and one head of cattle. The evidence further tends to show that the car was thirty six feet long and that the weight of the load was in excess of that provided in the regulations of the carrier. It further appears that the carrier's agent did not see the car loaded but from such information as he had, derived from the shipper himself, he wrote on the bill of lading "Over crowded—agent's protest disregarded". There is no evidence, however, that the agent made any protest in fact nor that he made any suggestion in regard to loading the car or unloading the surplus. The record only tends to show that this was written on the bill of lading before the consignor signed it but it does not tend to show he was aware of this interpolation. It is evidently true, however, that the car was loaded in excess of the load permitted by the carrier's regulations, and if this were the sole proximate cause of the injury suffered by the plaintiff . the plaintiff could not recover. The rule in this behalf, with supporting authorities is laid down in the note to **Illinois Central Railroad Co. v. Rogers, Ann. Cases 1916E, page 1203.** The record in this case, however, tends to show that other factors in addition to the overloading entered into this case. The evidence shows that the day was excessively hot, especially during the earlier stages of the travel. The distance from Peebles, the point of shipment, to the point of destination was seventy two miles. The shipment started at 2:25 P. M. It reached Clare, the end of the division, sixty two miles, at 9:18. It reached the stock yard some six hours later and was not delivered to the consignee until 6:00 o'clock the next morning.

The evidence warranted a finding, however, that the loss of the hogs was not wholly due to the overloading of the car but was due to the length of time that intervened between the receipt of the hogs and their delivery and that the hogs were not given by the carrier the attention that a shipment of hogs in the heat of that particular day required. In the note in **Ann. Cases 1916E** above referred to, after laying down the general rule to which we have adverted, it is said:·

"Limiting the general rule, the courts have held that a carrier is liable if by the exercise of due care after the improper loading of live stock by the shipper it could prevent injuries thereto—in other words, that while the negligence in loading excuses the carrier for injuries resulting therefrom, it does not relieve it from liability for injuries which would not occur but for the carrier's subsequent negligent act."

This rule is supported by **Lake Shore & Michigan Southern Railway Co. v. Gibson, 8 C. C. (n. s.) 345.** The facts in the latter case are so nearly parallel to the facts in the case at bar that we would be compelled to ignore that opinion altogether if the judgment in the instant case was not affirmed, and to not follow the Gibson case would do violence to the principles laid down in **Union Express Co. v. Graham, 26 O. S. 595,** on which the Gibson case is based. What we conceive to be the case law of Ohio as laid down in the two authorities referred to seems to be the law generally prevailing as developed in **10 Corpus Juris, page 101** and following, and the cases therein cited.

Because it does not appear that the answer of the defendant is necessarily true in its charge that the loss suffered by the shipper was solely due to overloading we find no error in the finding and judgment.

The judgment is affirmed.

Mauck, J, concurs.